## Crab Orchard Banking Company, et al. v. Saunders, et al.

(Decided February 16, 1917.)

### Appeal from Lincoln Circuit Court.

1. Insane Persons—Sale of Land for Taxes—Forfeiture—Notice.—
    Where the lands of a lunatic are sold for taxes, the purchaser

forfeits his purchase, if he fails, within six months after the certificate of purchase is delivered to him, to give notice in writing of his purchase to the committee of the lunatic, if there is one, and if not, to the person having the lunatic in charge, and the lands may be redeemed at any time within five years from the receipt of the notice. .

2. Taxation—Purchaser of Land at Tax Sale—Notice.—The purchaser of lands sold for taxes must give the notice to the owner of the lands provided for by section 4153 and 4158, Kentucky Statutes, as a condition precedent to his right to be vested with the fee simple title to the lands, otherwise he will only have a lien upon the lands for the purchase price, interest and penalties, as provided by law.

3. Taxation—Purchaser of Land at Tax Sale—Notice.—The notice in writing, which a purchaser of lands sold for taxes, is required to give of his purchase, by section 4153, Kentucky Statutes, must be served in the manner provided by sections 624 and 625, Civil Code, and section 4158, Kentucky Statutes, the latter controlling when there is a difference between its provisions and those of the code sections, supra.

4. Taxation—Sale of Land for Taxes—Notice.—A letter addressed and sent by mail to the owner of lands sold for taxes is not a sufficient notice, in writing, required by section 4153, Kentucky Statutes.

J. B. PAXTON for appellants, Crab Orchard Banking Company and Lincoln County National Bank and George D. Florence.

C. C. WILLIAMS for appellants, Carpenters.

J. N. SAUNDERS for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing in part and affirming in part.

Jennie P. Carpenter and Dovie A. Carpenter, sisters, and unmarried, jointly owned a vacant lot in Stanford.

Jennie P. Carpenter became indebted to the Lincoln County National Bank, and, also, to the Crab Orchard Banking Company for moneys, which she borrowed from those financial institutions.

The Lincoln County National Bank recovered a judgment against Jennie P. Carpenter, for the sum of one hundred and fifty-eight dollars and sixty-three cents, with interest thereon from December 12th, 1912, until paid, and the costs of the action, and an execution of *fieri facias* having been issued thereon on May 5th, 1913, it was levied upon her undivided interest in the lot, on May 14th, 1913.

The Crab Orchard Banking Company recovered a judgment against Jennie P. Carpenter for the sum of two hundred and ninety-two dollars and thirteen cents, with interest from September 12th, 1909, and caused an execution of *fieri facias* to be issued and levied upon her undivided portion of the lot on July 18th, 1913.

The lot was assessed for the taxes due the town of Stanford for the years 1908 to 1912, inclusive, against Jennie P. Carpenter and Dovie A. Carpenter, and not having been paid, B. D. Carter, the collector of taxes for the town, not having enforced their collection, was compelled and did pay the taxes to the town for those years, which aggregated the sum of fifty-three dollars and twenty-five cents.

Under an ordinance of the town of Stanford, adopted April 3rd, 1913, a contract between H. C. Anderson and the town was entered into on June 5th, 1913, to build a concrete sidewalk alongside the lot. Anderson performed his contract and the work was accepted by the council on October 10th, 1913, and a lien upon the lot declared for the benefit of Anderson for the sum of seventy-three dollars and eight cents, with interest from the acceptance of the work until paid.

The taxes upon the lot, which were due the state and county for the years 1908, and 1909, were assessed against Jennie P. and Dovie A. Carpenter, and not having been paid, the sheriff of Lincoln county advertised and sold a portion of the lot in satisfaction of the taxes for the years mentioned, and the costs of the sale, when J. N. Saunders became the purchaser on the 14th day of February, 1910, for the sum of twenty-three dollars and twenty-five cents.

The taxes due the state and county for the years 1910 and 1911, respectively, not having been paid, the sheriff advertised and sold the entire lot in satisfaction of these taxes and the costs of sale, on the 12th day of February, 1912, when J. N. Saunders became the purchaser at the sum of twenty-nine dollars and sixty-five cents.

To protect his rights and property as a purchaser of and lien holder upon the lot, Saunders paid the taxes due upon the lot to the graded school district, in which it is situated, for the years 1911, 1912, and 1913, in the sums of five dollars, four dollars and twenty cents and three dollars and thirty-six cents, respectively. He,

also, paid to the sheriff on December 3rd, 1913, taxes, for the state and county, in the sum of eight dollars and ninety-five cents.

The Crab Orchard Banking Company instituted this action on July 21st, 1913, making Jennie P. Carpenter, Dovie A. Carpenter, J. N. Saunders, B. D. Carter, H. C. Anderson, and Lincoln County National Bank, parties to the action, and asserting a lien upon the undivided interest of Jennie P. Carpenter in the property, and asking that Saunders, Carter, Anderson, and Lincoln County National Bank be required to assert their claims in the action, and a judgment for the sale of the entire lot to satisfy the liens thereon.

In due time, answers and cross-petitions were filed by the defendants. Carter claimed a superior lien upon the property by subrogation to the lien of the town of Stanford. Anderson likewise, set up his claim and asserted a lien upon all the property. The Lincoln County National Bank claimed a lien upon the undivided interest of Jennie P. Carpenter, superior to all liens, except those of Carter and Anderson. J. N. Saunders claimed the fee simple title to the lot by reason of his purchase at the sales of it by the sheriff, and it having never been redeemed, and more than two years having expired since each of the sales. He alleged that each of the steps made necessary to the validity of a sale of real estate for taxes had been fully complied with, and made the sheriff a party defendant upon his cross-petition, and requested that he be required to convey the property to him by deed. Jennie P. Carpenter denied that the requirements of the statutes had been complied with by the sheriff in making the sales, or that Saunders had complied with the requirements of the law as a purchaser. She denied that after the purchases, he had given to her or to Dovie A. Carpenter, the notice in writing required by sections 4153 or 4156, Ky. Statutes, and for that reason he did not become vested with the title of an owner in fee simple. She, also, claimed that Dovie A. Carpenter, who had died pending the litigation was largely indebted to her for the payment of her expenses in sanitariums, and asserted a lien upon the undivided interest of Dovie A. Carpenter in the lot to secure the payment of the indebtedness to her. Saunders denied that the Crab Orchard Banking Company or the Lincoln County National Bank had any valid lien

upon the interest of Jennie P. Carpenter in the lot, because their executions were not levied until after the sales for taxes had been made by the sheriff. The issues having been completed, such proof, as the parties desired, was taken and the cause submitted for trial and judgment.

The court adjudged that neither the Crab Orchard Banking Company nor the Lincoln County National Bank, had any lien upon the undivided one-half interest in the land, which had been owned by Jennie P. Carpenter, by reason of the levy of the executions thereon, presumably for the reason that the title to her interest in the property had become vested in Saunders, as the purchaser at the tax sales, before the levy of the executions. It was, also, adjudged that Saunders was the holder of the fee in the interest in the property, which was formerly owned by Jennie P. Carpenter, as well as the fee in the undivided portion of the property formerly owned by Dovie A, Carpenter in the portion of the lot, which was sold by the sheriff and purchased by Saunders, on the 14th day of February, 1910, and the sheriff was directed to execute and deliver a deed to Saunders for the portions of the lot to which he was adjudged to be the owner, in fee, as above stated, subject to the liens of Carter and Anderson for such pro rata portions of their claims as was equitable. Carter and Anderson were adjudged to have liens upon the entire lot for the payment of their claims. The lien of Carter was adjudged to be the superior to that of Anderson. Dovie A. Carpenter having died, intestate, and without the ownership of any personal estate, during the pendency of the action, it was revived as against her representatives, and the court adjudged that Jennie P. Carpenter had a lien upon the portion of the lot, which had not been ordered to be conveyed to Saunders, and which was owned by the heirs of Dovie A. Carpenter, for the payment of the indebtedness of Dovie A. Carpenter to Jennie P. Carpenter, but subject to the lien of Saunders thereon to secure the payment to him of certain taxes thereon, which had been paid by him, and subject to the liens of Carter and Anderson upon the entire lot. A sale of the entire lot was adjudged to satisfy the claims of Carter and Anderson. A sale of the portion adjudged to be owned by the heirs of Dovie A. Carpenter to satisfy the lien of Jennie P. Carpenter and the other liens thereon adjudged.

From the judgment, the Lincoln County National Bank, the Crab Orchard Banking Company, Jennie P. Carpenter, and Belle Dalton, James G. Carpenter, Geo. F. Carpenter, and D. R. Carpenter, the latter four as the heirs of Dovie A. Carpenter, have appealed.

There is not any complaint made of the judgment in behalf of Carter and Anderson, and hence, no further consideration of them will be given. There is not any contention with regard to the amounts of the judgments in favor of the Crab Orchard Banking Company, the Lincoln County National Bank, nor that in favor of Jennie P. Carpenter against the heirs of Dovie A. Carpenter. There is not any dispute as to the amounts which Saunders had paid on the purchases made by him, and in the discharge of taxes since that time. There is not any serious contention as to the regularity of the sales, at which Saunders was a purchaser. The certificates of the sales were regularly made and signed by the sheriff and delivered to Saunders, who caused them to be recorded in the office of the clerk of the county court within due time. The certificate of the sale made by the sheriff on February 14th, 1910, was recorded in the clerk's office on March 27th, 1910. The certificate of the sale made on February 12th, 1912, was recorded in the clerk's office on March 27th, 1913.

The only question to be determined is: Did Saunders, by his purchases and the proceedings incident to same, become the owner in fee of the portions of the lot, which were adjudged to him, and was he entitled to a deed conveying to him the fee simple title of Jennie P. Carpenter and Dovie A. Carpenter in the portions of the lot so adjudged?

Saunders stated, and it is not controverted, that on March 22nd, 1910, he gave to Jennie P. Carpenter and Dovie A. Carpenter notice in writing of the sale and his purchase of the lands, by writing to them or to each of them, a letter, which he addressed to them at their residence and post office address at Georgetown, Ky.; that he placed the proper amount of postage upon this letter or letters, and placed same in the post office. There was printed on the corner of the envelopes his name and post office address, with directions to return same to him if not delivered, and that the letter or letters had never been returned to him. Dovie A. Carpenter became a lunatic in 1902 or 1903, but for several years was

treated at the Beechurst Sanitarium, but on the 10th day of September, 1907, she was declared a lunatic by a judgment of the Jefferson county court and since that time and until her death was confined in the asylum for the insane at Lakeland, Ky. It does not appear that she ever had a committee.

Section 4156, Ky. Statutes, provides as follows:

"Any minor or other person laboring under legal disability, except a lunatic or married woman, at the date of sale, shall have one year after the removal of the disability within which to redeem such property, which may be done by paying the purchase money, with fifteen per centum on the amount thereof, and interest at the rate of ten per centum per annum from the date of the sale, and the costs of the sale. But any purchaser, other than the state, county and district, shall forfeit his right to his purchase, unless within six months after the sheriff shall have delivered to him a certificate of his purchase hereinafter provided for, he shall, in writing, give notice of his purchase to both husband and wife, in case the purchase be of land of a married woman, or to the statutory guardian of an infant, if there be one; if not, to the parent; if none, to the person having in charge such infant, if the purchase be of the land of an infant; or to the committee of the lunatic, if one; if none, then to the person having charge of such lunatic, if the purchase be of the land of a lunatic. If the lands of a lunatic or married woman be not redeemed within five years from the reception of the notice, the sale shall become absolute."

From the terms of the statute, it appears, that unless notice in writing of the purchase was given by Saunders to the committee or person having, in charge, Dovie A. Carpenter, within six months after the certificate of purchase was delivered to him, he forfeited his right to the purchase, so far as related to her interest in the land sold. Hatcher v. Hawes, 138 Ky. 464; Anderson v. Batson, 18 R. 493. The certificate of the sale of February 14th, 1910, bears date as of that day, and it is presumed to have been issued upon and received by Saunders upon that day. He never, at any time or in any way, gave notice to the committee of Dovie A. Carpenter as she had none, or the person having her in charge, of the sale or purchase. She was then confined in the Lakeland Asylum, and was not in the custody or

charge of Jennie P. Carpenter.  It is insisted, however, that notice in writing was given to the superintendent of the Lakeland Asylum for Dovie A. Carpenter of the sale and purchase of the entire lot, made on the 12th day of February, 1912, within six months after the receipt of the sheriff's certificate.  This notice, if sufficient, could only affect the sale and purchase made on February 12th, 1912, and five years not having expired since that time, the right of redemption still remains, and that seems to have been the view taken by the chancellor, with reference to the sale of February 12th, 1912.  The failure to give the notice of the sale of February 14th, 1910, within the time provided by the statute, is a complete bar to Saunders' right to be invested with title to the interest of Dovie A. Carpenter, in the land sold, and at most he would only have a lien thereon to secure the payment to him of the amount of the purchase price, costs, interest and penalties provided by law, and the taxes since paid by him upon the lot, which are properly chargeable to her undivided portion of it.

The sales of the interests of Dovie A. Carpenter in the lot have been considered upon the assumption, that the writing and mailing of a letter to the owner of the lands sold for taxes was a sufficient notice to make the sale valid.  A letter was written and mailed to Jennie P. Carpenter, who was then an unmarried woman and laboring under no disabilities; and, addressed to her at the post office at her usual place of abode, within fifty days after each of the sales, in which she was notified of the sale and purchase of the land, and such a letter, after the second sale, was sent by mail to the superintendent of the Lakeland Asylum, having Dovie A. Carpenter in charge.  Whether the superintendent ever received the letter addressed to him does not appear. Jennie P. Carpenter, by her answer, denies the receipt of either of the letters, which Saunders says that he wrote and mailed to her.

Section 4153, Ky. Statutes, after providing for notice to the owners of lands, which are sold for taxes, and purchased by the sheriff for the state and county and district, and imposing a penalty for the failure of the county attorney to give such notice, then provides:

"It shall be the duty of the purchaser, other than the state, county and district, within fifty days after the sale, to give notice, in writing, to the owner of the land

purchased by him of such purchase, and if such land be not redeemed within six months after such notice, he may institute proceedings for the recovery of the possession of the land.''.

Section 4158, Ky. Statutes, provides, after providing that where the lands are purchased by the state, county or district, that the failure to give the notice provided for by section 4153, *supra,* shall not affect the title of the state, county and district, as follows:

''But if the owner of the land purchased can not be found, then the notices required by sections 31 and 34 (4153 and 4156) of article 8, of this chapter, shall be served as follows, viz.:

''First. Upon any member of his family in the county, over sixteen years of age; if none, then,

''Second. Upon his agent, if any in the county; and if none, then,

''Third. By a printed or written notice, posted at the court house door and on or near the premises.''

It thus appears that the legislature has provided a person, in every state of case, upon whom the purchaser of land sold for taxes may cause the notice of his purchase to be served. It must be served upon the owner, if he can be found, and if he can.not be found, then it. shall be served upon one of the persons or in the way provided by section 4158, *supra.* It seems that the giving of the notice is a mandatory requirement of the statutes, and a condition precedent to vesting title in the land in a purchaser, other than the state, county and district. Such mandatory requirement is founded upon a good reason, when it is considered that real property sold for taxes is invariably purchased for a sum, which is small and insignificant compared with the value of the property, and if such notice was not required, it would oftentimes result in the ignorant, helpless and unfortunate having to suffer a sacrifice and deprivation of their property, because of ignorance or misfortune. It is, moreover, within the power of every purchaser of land, at a sale for taxes, to give the notice required by the statutes.

In 29 Cyc. 1119, the text is:

''And where the statute requires the notice to be given in writing, it must be by delivery of the original or a true copy.''

Where a statute requires a notice, in writing, to be given to some person, it means a personal service, which is to bring actual knowledge, as distinguished from the states of case, wherein, as a matter of law, a person must be deemed to have knowledge of a matter. In many states, the statutes require a purchaser of land, at a sale for taxes, to give notice to the owner of the time of the expiration of the redemption period. In such states of case, the giving of such notice is a condition precedent to the vesting of title in the purchaser at the expiration of the redemption period. Discussing the manner of the service of such a notice where required, it is said in 39 Cyc. 1404:

"The notice must be served in the same manner as a judicial writ, or at any rate in such a manner as to bring it effectively to the notice of the person to be served."

The notice provided for by section 4153, *supra,* is in the nature of a redemption notice, as its only office is to notify the owner of the land, which has been sold for taxes, whom the purchaser is and where he may be found, and the necessity of ascertaining the amount due and arranging for and making a redemption of the land. While the language used in section 4153, *supra,* is "to give notice in writing," and is silent as to whether it shall be a notice formally served upon the owner of the land, the language used in section 4158, *supra,* as to what shall be done with reference to the notice, in the event the owner can not be found, says that it "shall be served" upon one of the parties there designated. It is the same language used in the Civil Code with reference to serving a summons or notice. Bouvier, vol. 2, 630, defines service, as applied to writs, summons and notices, as follows:

"The execution of a writ of process. Thus to serve a writ of capias means to arrest a defendant under the process, . . . . to serve a summons is to deliver a copy of it at the house of the party, or to deliver it to him personally, or to read it to him; notices and other papers are served by delivering the same at the house of the party or to him in person."

The Civil Code, section 624, defines the notices provided for in the code, and designates who may serve them as follows:

"The notices mentioned in this code must be in writing, must concisely state the purport thereof, and may be served by an officer, who is authorized to serve a summons, or by any person who is over the age of sixteen years, and not a party to nor interested in the action."

Subsections 2, 3, and 4, of section 624, *supra,* relate to the return, which the officer or person who serves a notice must endorse upon it. Section 625, Civil Code, provides that the service of a notice shall be by the delivery or the offer to deliver a copy, if the person upon whom it is to be served can be found, and if he can not be found at his usual place of abode, by delivering a copy to a person over the age of sixteen years, who resides in the same family with him, or if no such person be there, by affixing a copy upon the front door of his place of abode, and if the person can not be found and has no known place of abode in this state, by delivering a copy to his agent or attorney. Section 4158, *supra,* which must govern the giving of the notice provided by section 4153, *supra,* provides, that if the owner of the land can not be found, the notice must be served upon a member of his family over sixteen years of age, in the county, and if none, then upon his agent, if any in the county, and if none, then by posting the notice at the court house door and on or near the land. The latter statute does not provide for the service of the notice by delivering a copy to the owner of the land, or to a member of his family, or to his agent, but in Broaddus v. Mason, 95 Ky. 421, in which the manner of the service of a notice by a contestant of an election to a contestee was under consideration, the statute required the notice to be in writing, signed by contestant, stating his grounds of contest, but the statute was silent as to the mode of serving the notices, and the court said:

"But it does not prescribe the mode of serving such notice, and consequently the legislature must have intended it done according to section 625, Civil Code."

. . . .

While the mailing of a letter to a person at his address, postage prepaid, creates a presumption of fact, that it was received by such person as soon as it would be transmitted to him in the usual course of the mails, this presumption may be rebutted, and if the person to whom it was addressed denies its receipt, then the only

evidence, that the party received it, is the mailing of the letter, and if the letter was intended as a notice, the party then claiming to have given notice by such means must fail upon the issue as to whether or not the notice was served. Continental Insr. Co. v. Hargrave, 131 Ky. 844; Sullivan v. Kukendall, 82 Ky. 483; Springfield Fire & Marine Insr. Co. v. Jenkins, 9 R. 932; Ry. Officials & Employees Asso. v. Beddow, 112 Ky. 184; Benge's Admr. v. Eversole, 156 Ky. 140. It is not reasonable to presume that the legislature intended that the evidence of a fact, upon which the ownership of real estate must depend, should depend upon proof so slight as a mere presumption of a fact, and which is so easily overturned.

We conclude that the notice required to be given by a purchaser to the owner of lands sold for taxes, as required by section 4153, *supra,* must be served upon the owner or some one for him, as provided by sections 624 and 625, Civil Code, except wherein the service is provided for in a different manner by the requirements of section 4158, *supra,* which must be followed when its provisions differ from those of the code sections, *supra,* and we further conclude that a notice by mailing a letter is insufficient, and not the notice provided for by the statute. Hence, the fee simple title to any part of the lot in controversy did not vest in appellee, Saunders, and he was not entitled to have any part of it conveyed to him. The title to the lot is still in Jennie P. Carpenter and the heirs of Dovie A. Carpenter. The appellee, Saunders, has an equity therein and a lien thereon for the sums paid by him in discharge of the purchase prices paid by him at the two sales, and the taxes paid by him upon the lands with the interest and penalties provided by law. The appellants, Crab Orchard Banking Company and the Lincoln County National Bank, have liens upon the portion owned by Jennie P. Carpenter by reason of their execution levies, in point of priority in accordance with the times of the levies, but their liens are inferior to the liens of Saunders, Carter and Anderson. Jennie P. Carpenter has a lien upon the entire half of the land owned by the heirs of Dovie A. Carpenter, subject to the liens of Saunders, Carter and Anderson.

The judgment appealed from, so far as it pertains to the judgments in favor of Carter and Anderson, is affirmed, but otherwise the judgment is reversed, and

upon the return of the case to the circuit court, a judgment will be entered in accordance with this opinion, giving to the appellee, Saunders, a lien upon the lot, equal in dignity to that of the lien of Carter, and for other proceedings consistent with this opinion.